UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEBRA A. DOBBINS,               )
                                )
            Plaintiff,          )
                                )
        v.                      )    No. 4:15 CV 356 DDN
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security,  )
                                )
            Defendant.          )

# MEMORANDUM OPINION

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Debra A. Dobbins for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, pursuant to Sentence 4 of 42 U.S.C. § 405(g), the final decision of the Commissioner is reversed and the case is remanded to the defendant Commissioner for further proceedings consistent with this memorandum opinion.

## I. BACKGROUND

Plaintiff was born on August 10, 1959. (Tr. 8.) She filed her applications on June 18, 2012. (Tr. 120.) She alleged an onset date of February 21, 2012, at age 52, and that she was unable to work due to back injury, breathing problems, sleep apnea, diabetes, shortness of breath, other back problems, thyroid disease, hypertension, high cholesterol, depression, and asthma. (Tr. 167-68.) Plaintiff's applications were denied on October

25, 2012, and she requested a hearing before an administrative law judge (ALJ). (Tr. 197, 205.)

The ALJ held a hearing on August 8, 2013, and on September 27, 2013, decided that plaintiff was not disabled. (Tr. 129, 136.) The Appeals Council denied plaintiff's request for review of the ALJ's decision on January 30, 2015. (Tr. 1.) Thus, the decision of the ALJ is the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

**A.     Medical History Considered by the ALJ**

On December 11, 1973, when plaintiff was 14, an intelligence test of her was conducted by St. Louis Office of Special Education. The test indicated an overall IQ score of 79. No other documentation was available regarding plaintiff's special education records. (Tr. 529.) However, during a mental status evaluation of her, plaintiff indicated that she took special education classes during elementary school only. (Tr. 487.)

On August 8, 2009, plaintiff visited Mark Kowalski, D.O., of St. Louis University Hospital (SLUH) complaining of moderate back pain persisting for over two years. Plaintiff stated she did not seek treatment earlier "because it wasn't that bad." Plaintiff was diagnosed with acute mid-back pain and was prescribed Ultram for pain with instructions to follow-up with her primary care physician on August 10, 2009. (Tr. 540-42.)

On August 13, 2010, plaintiff was treated at SLUH by Brett Haugen, M.D., complaining of back pain, chest pain, tingling and swelling of her extremities, and shortness of breath that worsened while lying down. After her symptoms improved, plaintiff was diagnosed with chronic low-back pain and acute mid-back pain and was prescribed Ibuprofen with instructions to follow up within one week if her pain persisted or worsened. (Tr. 546, 552.)

On August 31, 2010, plaintiff returned to SLUH due to abnormal hepatic enzyme and thyroid panel test results obtained during her August 13, 2010 visit. Frederick Y.

Yap, M.D., noted plaintiff had full of range of motion in her back and exhibited no spinal tenderness. However, plaintiff appeared chronically ill and frail and was diagnosed with severe hypothyroidism and rhabdomyolysis[1] secondary to hypothyroidism. Plaintiff reported that she had not taken her medication for several months. Plaintiff was prescribed aspirin, Synthroid (for hypothyroidism), albuterol (for asthma symptoms), Zofran (for nausea), and Metformin (for diabetes mellitus) and was instructed to follow-up with her primary care physician within one week. (Tr. 561-63, 569.)

On September 14, 2010, plaintiff visited Grace Hill Neighborhood Health Center (Grace Hill) for her annual visit. She was referred to Barnes-Jewish Hospital (BJH) for a mammogram on October 13, 2010. The mammogram results were negative, and annual screening was recommended. (Tr. 591, 600-03.)

On November 1, 2010, plaintiff went to Grace Hill with intermittent back pain and hypothyroidism. Plaintiff said her symptoms were aggravated by pushing, rolling over in bed, standing, and walking but were relieved by exercising and heat. Vani Pachalla, M.D., noted that plaintiff's spine was positive for posterior tenderness, paravertebral muscle spasm, and bilateral lumbosacral tenderness. Straight leg raising tests were negative from the supine and sitting positions. Plaintiff was prescribed Ibuprofen and Flexeril (for muscle spasms). (Tr. 597-99.)

On October 24, 2011, plaintiff was admitted to BJH complaining of shortness of breath and swelling that started two weeks earlier. Plaintiff stated that she was unable to sleep due to an inability to lie back. She displayed generalized weakness and lightheadedness. Sanford S. Sineff, M.D., noted that plaintiff had gained thirty to forty pounds and exhibited paraspinal tenderness in the lumbar spine that was more significant on the right side. Plaintiff was diagnosed with hyperthyroidism, diabetes mellitus, gastroesophageal reflux disease, hyperlipidemia, anemia, hypertension, allergies, and

---

[1] Rhabdomyolysis is a condition where muscle tissue breaks down, leading to the release of muscle fiber contents into the blood. This condition often causes kidney damage. See http://www.webmd.com/a-to-z-guides/rhabdomyolysis-symptoms-causes-treatments (last viewed on February 22, 2016.)

prophylaxis. Plaintiff stated that she was taking her medications intermittently before running out four weeks earlier. (Tr. 384-89.)

Plaintiff returned to BJH on November 9, 2011, and was treated by Aron Rosenstock, M.D. Dr. Rosenstock noted that plaintiff had constant back pain plaintiff described as a "sharp stinging." Additionally, plaintiff was concerned about her ability to obtain medications and was instructed on patient assistance programs. (Tr. 401-04.)

She continued treatment at BJH on February 20, 2012. Plaintiff reported symptoms of generalized fatigue, mild shortness of breath, and exhibited significant weight gain. It was noted that plaintiff did not take her medication as prescribed for over a month and a half. Specifically, Dr. Rosenstock and Michael DeFer, M.D., noted that "Importance of adherence to medication strongly stressed! She needs to fill her scripts." (Tr. 405-06.)

On March 28, 2012, plaintiff again visited BJH and claimed that she had restarted taking her medications. Plaintiff weighed 266 pounds and complained of sleepiness. Again, medication compliance was stressed. (Tr. 408-09.)

On May 8, 2012, plaintiff was medication compliant, and by June 5, 2012, Dr. Rosenstock noted that plaintiff's symptoms had dramatically reduced and that she was "doing the very best that I have seen her. She notes that she is taking her medications." (Tr. 411-17.)

Plaintiff was admitted to Christian Hospital on August 4, 2012, exhibiting uncontrolled diabetes mellitus type II and blood in her stool. Nitika Kaswan, M.D., noted that plaintiff had not been feeling well for two to three weeks and was medication noncompliant for the past three weeks. Kimberly G. Perry, D.O., noted that plaintiff denied being in any pain. (Tr. 431, 436.)

On September 4, 2012, plaintiff was treated at MEDEX by Arjun Bhattacharya, M.D., primarily for back pain that had persisted for several months. Plaintiff weighed 250 pounds, and stated that she could walk one block, stand for thirty minutes, sit for two hours, and lift up to twenty pounds. Plaintiff had the ability to bend and stoop and did not use a cane, crutch, or walker. It was noted that plaintiff could do light housework,

4

including groceries and cooking, but was unable to do laundry or lift any weights. Plaintiff reported falling two months earlier, and Dr. Bhattacharya noted that plaintiff had spasms and walked in such a way as to avoid pain. Dr. Bhattacharya noted plaintiff's lumbosacral discomfort. (Tr. 474-76.)

Also on September 4, 2012, plaintiff saw psychologist Kimberly Buffkins, Psy.D., who diagnosed plaintiff with depressive disorder not otherwise specified. It was noted that the plaintiff had a history of special education in elementary school only. Dr. Buffkins also noted that plaintiff was alert and that her speech was coherent, thought process logical, and cognition oriented in all spheres. (Tr. 487-89.)

The Disability Determinations Section found that plaintiff could not return to any of her past relevant work on October 25, 2012. It was further noted that plaintiff was limited to unskilled work, had a limited education, had previous history in semi-skilled work, and had no transferable skills. (Tr. 167, 177-78.)

Plaintiff continued her treatment at Grace Hill on November 12, 2012. Anita Sarathi, M.D., noted that plaintiff went in for a medication refill and showed symptoms of diabetes mellitus and hypertension. Subsequently, Dr. Sarathi sent plaintiff a letter indicating that her tests were normal and encouraging her to take her medications. (Tr. 498-502.)

On December 7, 2012, plaintiff visited Grace Hill with back pain and diabetes mellitus and stated that Tylenol and Ibuprofen were not helping her back pain. Plaintiff also complained of pain shooting down her legs. Plaintiff mentioned that she fell in January and had a "heat/burning" in her lower back. (Tr. 503.)

On March 12, 2013, plaintiff appeared at Grace Hill, where Dr. Sarathi noted that plaintiff had lumbago, diarrhea, and diabetes mellitus. Plaintiff was positive for back pain and could not lie flat due to paraspinal pain. (Tr. 510-12.)

Subsequently, plaintiff underwent an x-ray of the lumbar spine on March 14, 2013. The report of the x-ray indicated a normal lumbosacral spine:

> Examination demonstrates intact vertebral bodies without fracture or bone destruction. Vertebral column shows normal alignment without

5

subluxation.  Disc spaces are well maintained.  No pars interartioularis defects noted.  The bowel gas pattern is unremarkable.

(Tr. 516.)

**C.     ALJ Hearing**

The ALJ conducted a hearing on August 8, 2013.  (Tr. 134-66.)  Plaintiff appeared and testified to the following.  She was hospitalized in 2003 when doctors found a tear in the back of her heart.  Plaintiff was diagnosed with congestive heart failure, and doctors prescribed coated aspirin but did not repair the tear.  During the same period, plaintiff had swelling in her feet, which doctors attributed to a thyroid issue for which plaintiff previously had surgery.  Plaintiff was prescribed medication for her thyroid, but did not take her medications for various periods because she was unable to afford the prescriptions.  (Tr. 139-41.)

After 2003, the swelling in plaintiff's hands and feet became less frequent but still cause discomfort every two to three months, with swelling periods lasting for one to two months.  Plaintiff wears support hose and gloves designed to alleviate the swelling in her legs and hands, respectively.  Due to a diagnosis of carpal tunnel syndrome, plaintiff also wears hand splints at night.  The pain in plaintiff's hands wakes her up at night and is intensified by contact.  (Tr. 143-45.)

In 2004, plaintiff slipped on a patch of ice and hurt her back.  Despite never fully recovering, she returned to work as a housekeeper at Willow Brook Nursing Home until early 2012, when she suffered another fall.  (Tr. 147-48).

Plaintiff does not drive due to her sleep apnea.  She is unable to afford a CPAP machine, and her children must watch her sleep because she can stop breathing at night. (Tr. 148.)

Plaintiff lost sixty pounds through diet and exercise.  Plaintiff walks and rides a stationary bike at a gym. However, her back pain limits her exertion and requires her to take breaks.  On the date of the hearing, plaintiff weighed 197 pounds.  (Tr. 146.)

6

Plaintiff testified that she worked through her back pain from the 2004 fall until early 2012, when she slipped and fell while getting into her car. (Tr. 147.)

Plaintiff testified that she is unable to stand for longer than thirty minutes, and is forced to bend over the sink to wash dishes due to pressure in her lower back stemming from her previous slips. Despite the pressure, plaintiff also tries to visit the gym daily. She is able to walk on the treadmill for thirty minutes and ride the stationary bike for twenty minutes. However, plaintiff also testified that she must sit or lie down regularly throughout the day. Plaintiff testified that she rests four or five times a day for at least thirty minutes each time. (Tr. 150-55.)

After falling in 2012, plaintiff attempted to return to work, but her employer sent her home. Plaintiff's doctor would not release her to begin working again due to her back problem. For this reason, plaintiff was eventually fired. (Tr. 156-57.)

Plaintiff sleeps no more than four hours each night, which requires her to take naps throughout the day. (Tr. 158-59.)

## C. Decision of the ALJ

On September 27, 2013, the ALJ determined that plaintiff was not disabled. The ALJ found that plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2016, and that she had not engaged in substantial gainful activity since February 21, 2012. Additionally, the ALJ found that plaintiff had severe impairments of lumbago, diabetes mellitus, and obesity. However, the ALJ also found that plaintiff did not have an impairment of combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 122, 125.)

The ALJ determined that plaintiff was unable to return to her past relevant work as a hospital or commercial cleaner. (Tr. 127.) However, the ALJ also determined that plaintiff retained the residual functional capacity (RFC) to perform light work that involves no exposure to pulmonary irritants and no more than frequent (one-third to two-thirds of the time) manipulation, gripping, reaching, or handling with both arms. (Tr.

125.) Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act. (Tr. 129.)

D.     **Additional Medical History Submitted to the Appeals Council**

On April 1, 2014, plaintiff submitted medical records to the Appeals Council from Myrtle Hilliard Davis Comprehensive Health Center containing clinic notes dated October 22, 2013 through February 25, 2014; lab work dated February 10, 2014; and an MRI report dated December 10, 2013. (Tr. 77.)

On October 22, 2013, Michael Spearman, M.D., noted that plaintiff's lumbar/lumbosacral spine exhibited abnormalities and tenderness on palpation. Dr. Spearman noted that plaintiff hoped to receive a referral for an MRI. (Tr. 80-81.)

Plaintiff visited Dr. Spearman for a follow-up on December 6, 2013. Dr. Spearman noted that plaintiff's spine continued to exhibit abnormalities. (Tr. 85-86.)

On December 10, 2013, plaintiff underwent a lumbar spine MRI, and Yihua Zhou, M.D., reported that plaintiff had mild diffuse disc bulge and mild bilateral facet arthropathy, or joint disease, at L3-L4; diffuse disc bulge and moderate bilateral facet arthropathy resulting in mild central canal stenosis at L4-L5; and, at L5-S1 mild diffuse disc bulge and moderate right and mild left facet arthropathy resulting in moderate right neuroforaminal narrowing. It was Dr. Zhou's impression that plaintiff had mild to moderate degenerative disc disease of the lumbar spine from L3 to S1 resulting in mild central canal stenosis at L4-L5 and moderate right neuroforaminal stenoses at L5-S1. (Tr. 89.)

On January 13, 2014, Alicia Gonzalez, M.D., performed an initial psychiatric exam for plaintiff's depressed mood. Dr. Gonzalez found that plaintiff suffered from moderate recurrent major depression and increased plaintiff's psychoactive medication management prescription. (Tr. 95.)

Plaintiff's chronic back pain and spinal stenosis were consistently noted by Dr. Spearman during follow-up visits on January 24, February 10, and February 25, 2014.

On February 25, 2014, Dr. Spearman prescribed Gabapentin for the pain associated with plaintiff's spinal stenosis-lumbar. (Tr. 99, 102, 112.)

### III.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pates-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pates-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If she does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work. Id. §

9

404.1520(a)(4)(iv).  The claimant bears the burden of demonstrating that she is no longer able to return to her past relevant work.  Pates-Fire, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to her past relevant work, the burden shifts to the Commissioner at Step Five to show that the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## IV.  DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the decision did not properly set out all of plaintiff's severe impairments and did not pose all relevant limitations during the hypothetical questioning of the vocational expert (VE); and (2) the Appeals Council improperly failed to consider new and material evidence obtained after the ALJ decision.

### A.     Plaintiff's alleged borderline intellectual functioning

First, plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ (1) failed to determine that that plaintiff's borderline intelligence was a severe impairment and (2) failed to include plaintiff's alleged borderline intelligence in the hypothetical questions posed to the VE.

Specifically, plaintiff points to the intelligence test conducted on December 11, 1973, which indicated an overall IQ of 79.  (Tr. 529.)  Generally, an IQ score between 71 and 84 constitutes borderline intellectual functioning which must be considered by the VE.  Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999).  However, an ALJ may disregard a plaintiff's lone IQ score when it is inconsistent with the plaintiff's demonstrated activities and abilities on the record as a whole.  Clay v. Barnhart, 417 F.3d 922, 929 (8th Cir. 2005).  While a plaintiff's IQ is presumed to remain stable over time, evidence of a plaintiff's improved intellectual functioning may refute an otherwise valid IQ score.  Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001).

In this case, plaintiff relies solely on a dated IQ score that is inconsistent with the record as a whole. There was substantial evidence to support the ALJ's conclusion that plaintiff did not suffer from a severe mental impairment. Plaintiff participated in special education classes in elementary school only and continued her education through the eleventh grade. She is able to read and write. Plaintiff's mental status exam indicated that her speech was coherent, her thought process logical, and her cognition oriented in all spheres. Plaintiff's concentration, persistence, and pace were fair-to-poor during the mental status exam. (Tr. 148, 487-89.)

Also, plaintiff previously managed a cleaning and maintenance crew and indicated that she was a lead worker who supervised nine or ten people. (Tr. 297.) In his decision, the ALJ noted that plaintiff reported that she could dress and bathe herself, prepare meals, perform housework, wash laundry, shop, pay bills, handle financial accounts, and read. (Tr. 124.) It is notable that plaintiff did not allege this mental impairment in her initial application or during the ALJ hearing. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (failure to allege disabling mental disorder in the initial application supported the ALJ's conclusion that plaintiff's borderline intelligence did not constitute a severe impairment). Further, plaintiff's initial application indicated that she had not sought or received treatment for any mental condition, including emotional and learning problems. (Tr. 298.)

While additional evidence obtained after the ALJ hearing indicates that plaintiff suffers from moderate recurrent major depression, which is an emotional problem, this evidence does not support plaintiff's claim that she has borderline intellectual functioning. (Tr. 95.)

Here, there was substantial evidence in the record to support the ALJ's determination that plaintiff did not suffer from a severe mental impairment related to alleged borderline intellectual functioning. Thus, the ALJ's questioning of the VE was not required to include plaintiff's alleged borderline intellectual functioning.

**B.     Plaintiff's new evidence submitted to the Appeals Council**

Next, plaintiff argues that the Commissioner's final decision is not supported by substantial evidence, because the Appeals Council improperly failed to consider new and material medical evidence obtained after the ALJ decision. Specifically, plaintiff points to records ranging from October 22, 2013, to August 12, 2014. Most notable is an MRI of her lumbar spine obtained on December 10, 2013, which indicated that plaintiff suffered from diffuse disc bulge, mild bilateral facet arthropathy at L4-L5, and mild diffuse disc bulge with moderate right and left facet arthropathy. Michael Spearman, M.D., concluded that plaintiff had chronic back pain, degenerative disc disease, and spinal stenosis. In its denial of review, the Appeals Council acknowledged the evidence but did not consider it because it post-dated the ALJ decision. (Tr. 89, 93).

The Appeals Council is obligated to consider additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision as if it was presented to the ALJ. 20 C.F.R. § 404.970(b); Whitney v. Astrue, 668 F.3d 1004, 1006 (8th Cir. 2012). In Whitney, the plaintiff submitted evidence to the Appeals Council of a psychiatric evaluation obtained five months after the ALJ's decision. Whitney, 668 F.3d at 1005. Like this case, the Appeals Council acknowledged receiving the evidence, but failed to determine whether the evidence was new, material, and related to the period on or before the date of the ALJ's decision. Id. at 1006. The Whitney court recognized that the Appeals Council improperly failed to determine whether the additional evidence was new, material, and related to the period on or before the date of the ALJ decision. Id. The court determined that, if the additional evidence was timely submitted, the matter should be remanded to the Appeals Council. Therefore, if the evidence meets the 20 C.F.R. § 404.970(b) criteria, "the Appeals Council MUST consider the additional evidence." Id. (emphasis in original).

In this case, the Appeals Council acknowledged receipt of the additional evidence, but did not consider it because it post-dated the ALJ decision. (Tr. 2.) However, the Appeals Council may be obligated to consider additional evidence that post-dates the ALJ decision, "if it relates to the claimant's condition on or before the ALJ's decision."

Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2012).  Therefore, the additional evidence is tested for novelty and relatedness, not timing.  The Appeals Council's failure to consider the additional evidence may be a basis for remand.  See Whitney, 668 F.3d at 1006.

In the present case, the Commissioner contends that the evidence is not new, because it is merely cumulative of other evidence considered by the ALJ.  However, new evidence can be characterized by documentation of an impairment to which the plaintiff testified but which was not otherwise substantiated in the record.  Geigle v. Sullivan, 961 F.2d 1395, 1396-97(8th Cir. 1992).  Cumulative evidence, on the other hand, is redundant because it reiterates the same information previously considered by the ALJ.  See Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012).  In Perks, the plaintiff submitted an MRI report to the Appeals Council that existed *before* the ALJ's decision.  Id. (emphasis added).  Although that MRI report was new in that it was never submitted to the ALJ, the opinions of the doctors who reviewed that MRI report were presented to the ALJ.  Id.  Therefore, that court found that the MRI report was not new because it was cumulative of the doctors' opinions who reviewed the MRI report.  Id.  Unlike that MRI report, plaintiff's additional evidence is new because it was obtained after the ALJ decision.  Additionally, it is not cumulative because it offers new evidence about the plaintiff's alleged condition.

Next, the additional evidence must be material to warrant a remand.  The Commissioner argues that the evidence is neither relevant nor probative of plaintiff's condition because it was obtained after the relevant time period.  However, new evidence may be material despite post-dating the ALJ decision.  Cunningham, 222 F.3d at 502.  Instead, evidence is material if it is relevant and probative to the claimant's condition during the time period for which benefits were denied.  Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993).  In Woolf, the plaintiff submitted additional evidence after the ALJ decision relating to a nerve impairment in the plaintiff's wrist.  Id.  That plaintiff failed to allege the nerve impairment in her initial application and did not argue it during the ALJ hearing.  Id.  Therefore, the new evidence was immaterial because it related to an

13

impairment the ALJ never considered. In cases where new evidence relates to a condition not alleged in the initial complaint, the plaintiff must reapply. Id. In this case, the additional evidence offers insight into the severity of plaintiff's previously alleged back impairments because it provides objective evidence corroborating plaintiff's subjective complaints of pain. Therefore, the additional evidence is material and probative of plaintiff's alleged back impairments.

Also, to be material, there must be a reasonable likelihood that it would have changed the ALJ's determination. Woolf, 3 F.3d at 1215. It is not this Court's duty to reweigh the evidence. Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995). However, it must be determined whether there is a reasonable likelihood that the ALJ's decision would be different in light of the additional evidence. Woolf, 3 F.3d at 1215. In this case, there is a reasonable likelihood that the additional evidence would change the ALJ's decision.

During the hearing, the ALJ stated that "Social Security can't take an MRI." Plaintiff could not afford an MRI and relied upon an x-ray that failed to show abnormalities in her back. The ALJ further noted that, "this is a tough case, you know. The problem is we don't have any abnormality in your back. *That's the problem*." (Tr. 163-164.) (emphasis added). The ALJ's decision stated that, "most damaging to her credibility is the normal x-ray of her lumbosacral spine." (Tr. 127.) The additional evidence supports plaintiff's alleged back condition. Specifically, the MRI report and subsequent medical records indicate that plaintiff suffers from mild to moderate degenerative disease of the lumbar spine from L3 to S1, resulting in mild central canal stenosis at L4-L5 and moderate right neuroforaminal stenosis at L5-S1. (Tr. 89.) Additionally, ten days after the MRI was reported, Dr. Spearman indicated that plaintiff's active problems included "Spinal Stenosis-Lumbar," which rebuts the ALJ's decision that the record did not contain evidence of spinal stenosis-lumbar. (Tr. 90, 125.) In light of the additional evidence, there is a reasonably strong likelihood that the additional evidence would have changed the ALJ's decision.

In this case, the Appeals Council failed to consider the additional evidence consistent with regulation 20 C.F.R. § 404.970(b). The Appeals Council's conclusory rejection of the additional evidence was improper because the evidence was new, material, and related to the relevant time period. 42 U.S.C. § 405(g) permits this court to reverse and remand this case to the Commissioner in order to determine whether the ALJ's initial decision is still supported by substantial evidence on the record as a whole, including the additional evidence.

## V. CONCLUSION

For the reasons set forth above, pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with this memorandum opinion.

An appropriate Judgment Order is issued herewith.


           /s/ David D. Noce       
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 22, 2016.